UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ANTONIO GAHUIN AISALLA (A-220-563-651),<br><br>                    Petitioner,<br><br>          v.<br><br>KRISTI NOEM, et al.,<br><br>                    Respondents. | No.  1:26-cv-1744 DJC CSK<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Marco Antonio Gahuin Aisalla (A-220-563-651), a native and citizen of Ecuador who is proceeding through counsel, entered the United States on or about August 20, 2021, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner was initially detained by Customs and Border Patrol inside the United States and released on August 20, 2021 on parole.  On March 9, 2022, petitioner was arrested by the Department of Homeland Security ("DHS") and released on his own recognizance.  On August 15, 2025 petitioner was arrested and re-detained by U.S. Immigration and Customs Enforcement ("ICE") and has been in continuous detention since this date.  This habeas action concerns petitioner's re-detention. Pending before the Court is respondents' motion to dismiss.  For the reasons that follow, the Court recommends that respondents' motion to dismiss be denied, the petition for writ of habeas corpus be granted, and petitioner be immediately released.

1

## I.      FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of Ecuador who entered the United States on or about August 20, 2021.  (ECF No. 14-3 at 1.)  Petitioner was briefly detained by Customs and Border Patrol, then released on parole.  (ECF No. 14-1 at 2.)  On March 7, 2022, petitioner was issued a Notice to Appear in Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[2]  (ECF No. 14-3 at 1-4.)   On March 9, 2022, petitioner was arrested by DHS and released on his own recognizance.  (ECF No. 14-2 at 1- 2.)  On August 15, 2025, petitioner was re-detained by ICE agents near Spencerport, New York.  (ECF No. 14-4; ECF No. 14-5 at 2.)  Petitioner was not provided a pre-deprivation hearing prior to his re-detention on August 15, 2025.  (See ECF No. 1 at 6.)

On or around December 10, 2025, petitioner requested a bond hearing.  (ECF No. 20-2 at 1-7.)  On December 12, 2025, an immigration judge denied petitioner's request for bond for lack of jurisdiction, citing Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  (ECF No. 20-1 at 1-2.)  On December 16, 2025, an immigration judge denied petitioner's application for asylum, request for withholding of removal under Immigration and Nationality Act ("INA") section 241(b)(3) and request for withholding or deferral of removal under the Convention Against Torture.  (ECF No. 14-6 at 1.)  The immigration judge ordered petitioner removed to Ecuador.  (Id. at 3.)  Petitioner appealed this order, which the Board of Immigration Appeals ("BIA") received on January 7, 2026.  (ECF No. 14-7.)  This appeal remains pending.  (ECF No. 14 at 2; see also https://acis.eoir.justice.gov/en.[3])

[1]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 8.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[2]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[3]  The court may take judicial notice of facts that are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including undisputed information posted on official websites.  Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010).  The Executive Office for Immigration Review ("EOIR") adjudicates immigration cases, and the EOIR Automated Case Information website is an official website of the United States Government.  The address of this official website is https://acis.eoir.justice.gov/en.

## II.    PROCEDURAL BACKGROUND

On February 26, 2026, petitioner filed his verified petition for writ of habeas corpus in the United States District Court for the Eastern District of New York.  (ECF No. 1.)  On March 3, 2026, the District Court for the Eastern District of New York transferred the petition to the United States District Court for the Eastern District of California because petitioner is detained within the Eastern District of California.  (ECF No. 7.)   On March 4, 2026, the district court referred this action to the undersigned.  (ECF No. 11.)  On March 12, 2026, respondents filed a motion to dismiss.  (ECF No. 14.)  On April 10, 2026, this Court granted the application for pro hac vice filed by petitioner's pro bono counsel.  (ECF No. 19.)  On April 16, 2026, petitioner filed a reply/opposition to respondents' motion to dismiss.  (ECF No. 20.)  Respondents did not file a response to the reply.  (See Docket.)  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his continued detention based on the violation of the following: (1) prolonged detention in violation of the Fifth Amendment; and (2) re-detention without a pre-deprivation hearing in violation of the

Fifth Amendment.[4]  (See ECF No. 1 at 6.)  Respondents do not argue that petitioner is a flight risk or a danger to the community.  Instead, respondents argue that petitioner's prior release does not convert his presence into an "admission" and as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 14 at 1-2.)  Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at  2.)  In the alternative, respondents request that the Court stay this matter pending resolution of Rodriguez v. Bostock, No. 25-6842 (9th Cir.).  (Id.)

### A.    Due Process Claim (Claim Two)

Petitioner was previously released on his own recognizance in March 2022 and was re-detained without a pre-custodial hearing.  Respondents argue that his due process claim fails because petitioner does not have a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 14 at 2.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause

---

[4]  The petition incorrectly notes that petitioner is subject to 8 U.S.C. § 1231 based on a final order of removal.  (See ECF No. 1 at 2.)  The government states that petitioner has appealed the immigration judge's removal order to the BIA and submits supporting records.  (See ECF No. 14 at 2; ECF No. 14-7.)  Petitioner's removal order is not administratively final where his appeal to the BIA is pending, and therefore petitioner is not subject to 8 U.S.C. § 1231.  See 8 U.S.C. § 1231(a)(1)(B) (describing when removal period begins); Ocampo v Holder, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8 U.S.C. § 1101(a)(47)(B)) (an order of removal becomes final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order.").  The Court therefore construes petitioner's second claim as a due process claim challenging his re-detention without a pre-deprivation hearing.  In addition, the government does not assert that petitioner is detained subject to 8 U.S.C. § 1231, expressly note that petitioner has appealed the immigration judge's removal order, and do not address the prolonged detention claim.  (See generally ECF No. 14.)

applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole

conditions." Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's release on his own recognizance in March 2022 is similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over three years.  Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.  This Court finds that petitioner's release on his own recognizance in March 2022 gave rise to a constitutionally protected liberty interest.

Petitioner's release in March 2022 was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4.  This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of

6

that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over three years, petitioner was free from custody before his re-detention.  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is

typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF No. 14.)  In addition, respondents do not contend that petitioner has a criminal record.  (Id.)  Here, petitioner has been detained since August 15, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.  On December 12, 2025, an immigration judge denied petitioner's request for bond for lack of jurisdiction, citing Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  (ECF No. 20-1 at 1-2.)  The immigration judge's order reflects that they did not consider whether petitioner was a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over three years on release, and he has no criminal record.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly

8

dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claim based on his re-detention without a pre-deprivation hearing (claim two) and the appropriate remedy is petitioner's immediate release from detention.[5]

### B.    Petitioner's Other Claim for Relief

In light of the Court's recommendation that petitioner's requested relief be granted on claim two, petitioner's remaining habeas corpus claim (claim one) based on prolonged detention need not be resolved.

## V.    RESPONDENTS' REQUEST TO STAY

Respondents' alternative request that this matter be stayed pending a ruling by the Ninth Circuit in Rodriguez v. Bostock, No. 25-6842 (9th Cir.) should be denied because a stay is not in the interests of petitioner, who has been detained since August 15, 2025, and because a stay would not promote the efficient use of scarce judicial resources in a district with some of the highest caseloads in the country. A stay would put a further strain on limited judicial resources.

## VI.    RESPONDENTS' MOTION TO DISMISS

For the reasons set forth above, respondents' motion to dismiss should be denied.

## VII.    CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted as to claim two.

Accordingly, IT IS HEREBY RECOMMENDED that:

---

[5]    In the reply, petitioner requests a bond hearing before an immigration judge based on his prolonged detention. (See ECF No. 20 at 4.) Because petitioner is entitled to relief based on the due process violation from his re-detention without a pre-deprivation hearing, this Court finds that the appropriate remedy is petitioner's immediate release from detention.

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents' motion to dismiss (ECF No. 14) be DENIED.

3. Respondents be ordered to IMMEDIATELY release petitioner Marco Antonio Gahuin Aisalla (220-563-651) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

4. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified. Petitioner shall be allowed to have his counsel present at any such hearing. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 24, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Ais1744.imm.157.merits/2

10